## EUGENE ALTON v. W. G. HECHT.[1]

October 16, 1931.

No. 28,515.

*Paul C. Cooper,* for appellant.
*Leo J. Seifert,* for respondent.

LORING, J.

The plaintiff recovered a verdict in an action for a commission alleged to have been earned in finding a purchaser for certain Texas land. The defendant moved for a new trial and appealed from the order denying it.

The defendant was operating a real estate office at Raymonville in the Rio Grande valley, Texas. Archie Clark owned a tract of land of which the 115 acres which were subsequently sold through the plaintiff's efforts was a part. The plaintiff was traveling in that part of the country and found a man named Gable from Philadel-

[1]Reported in 238 N. W. 482.

phia, whom he thought he could interest in property in the neighborhood where Clark's land lay. The defendant and his partner, Johnson, had the Clark land for sale, and plaintiff testified that defendant promised plaintiff a commission for finding a purchaser. Clark wanted $100 an acre net to himself for the land here involved. When the plaintiff brought Gable down from San Antonio to look at the land defendant asked Gable $150 an acre for it, but subsequently agreed to reduce the price to $146.25 an acre. Gable agreed to take the land at that price and left $1,000 with defendant to close the deal. It was found that Clark's interest in the land was involved to such an extent that $1,000 would not clear up past due interest and taxes; so the Gulf Coast Irrigation Company, from which Clark had bought the land and to which he still owed a balance on the purchase price, took over the deal and refinanced it, giving Gable a deed. Gable, in addition to paying the $1,000, gave a first mortgage upon the land and what are known in Texas as "vendor's lien notes" for the balance. Plaintiff testified that at that time it was agreed between the parties hereto that he was to have one-third of the profits accruing from the deal. These profits amounted to $46.25 an acre or $5,318.75, less $200, which was charged by the Gulf Coast Irrigation Company for refinancing the deal, and also less $500, which was a further reduction made on the purchase price to Gable. One-third of this would amount to $1,606.25, of which the plaintiff admits he has been paid $200 by the defendant. The plaintiff also testified that he was to have his commission as soon as Gable had paid $3,200 of the purchase price. It is admitted that prior to the suit Gable had paid over $4,800. Defendant claimed that plaintiff was not to have his commission until the profits had been realized by the collection of the vendor's lien notes. The defendant also contended that the matter was a joint enterprise and that the firm of Hecht & Johnson were parties thereto.

On all these questions there seems to have been an issue of fact, properly submitted by the court to the jury and found in favor of the plaintiff. Taking the evidence most favorable to the plaintiff, as we must in a situation of this kind, we find that the jury's ver-

dict is sustained and that the defendant alone and not the partnership promised to pay the plaintiff his commission, and that it became due as soon as Gable had paid $3,200 upon the purchase price, which was prior to the commencement of the action.

In an endeavor to collect his commission the plaintiff signed a draft of a contract which he proposed to the defendant as a settlement. This draft provided for a payment of $271 in cash and that one of the vendor's lien notes from Gable to the irrigation company should be transferred to plaintiff. The plaintiff signed this draft of contract in his lawyer's office in Texas and left for Minnesota, evidently under the impression that defendant would sign it. The defendant paid plaintiff the $200 with which he is credited. Defendant never signed the proposed settlement, but while he had it under consideration plaintiff attempted to assign and did execute and deliver to one Coleman an instrument purporting to assign the vendor's lien note. This was done both as security for some debts to Coleman and in order that Coleman could effect a collection. Defendant contends that this assignment, absolute as it was on its face, could not be shown by parol to be only for security or for collection, and that such absolute transfer amounted to an assignment of plaintiff's commission and cause of action and prevents a recovery in this action.

The trial court admitted the oral evidence of the purpose of assignment and submitted to the jury the question of whether or not the assignment was absolute or only for the claimed purposes and whether or not the note represented plaintiff's commission. We discover no error in this because, even if the testimony were not admissible as between the parties to the instrument (a question we need not decide) defendant was not a party or privy to the instrument of assignment and is not in a position to invoke the rule. Nissen v. Sabin, 202 Iowa, 1362, 212 N. W. 125, 50 A. L. R. 1216, 1218. See also Horn v. Hansen, 56 Minn. 43, 57 N. W. 315, 22 L. R. A. 617; 3 Jones, Ev. p. 2711. The general verdict for plaintiff is a finding that the proposal to transfer the note to plaintiff had never been consummated so as to constitute the note a part of

plaintiff's commission. We find sufficient support for this in the evidence. The note was never delivered to plaintiff, and he never became the owner of it or had any interest in it to assign to Coleman. We therefore see in the assignment no bar to the plaintiff's action.

A careful examination of the record convinces us that the issues presented are questions of fact, properly submitted to the jury, and the order appealed from is affirmed.