JAMES E. SCOVEL, Appellant, v. THOMAS GAULEY et al., Appellees.

No. 40227.

MARCH 11, 1930.

*E. W. McNeil,* for James E. Scovel, appellant.

*Reed & Reed,* for J. W. Scovel, appellant.

*Clyde McFarlin,* for Thomas Gauley and Vada Gauley, appellees.

*Thomas J. Bray,* for J. J. Doonan, appellee.

GRIMM, J.—On March 9, 1929, the plaintiff filed in the district court of Poweshiek County, Iowa, a petition alleging the ownership of a certain promissory note for $8,600, dated March  1, 1919, signed by William G. Herter and Margaret Herter, and payable to Mrs. Jane Downey; also alleging the assignment of said note to the plaintiff, the execution of the mortgage to secure the payment thereof, and the assignment of the mortgage. The petition further alleges that, on February 27, 1919, the defendant J. W. Scovel purchased the real estate covered by said mortgage from the Herters, and that by the terms of said purchase Scovel assumed and agreed to pay

the mortgage indebtedness then on the property. The petition also alleges that, in May, 1919, the defendant Doonan purchased the real estate from J. W. Scovel, and by the terms of the contract of purchase, Doonan assumed and agreed to pay the mortgages, with interest. Thereafter, and on June 30, 1919, it is claimed, Doonan sold the real estate in question to Gauley, under a contract by the terms of which Gauley expressly assumed and agreed to pay the mortgage indebtedness on the property, amounting to $18,600, made up of a first mortgage of $10,000 and a second mortgage of $8,600. The plaintiff asked judgment against Gauley, Doonan, J. W. Scovel, and the Herters, and for foreclosure of the mortgage on the real estate.

The defendant Gauley, on March 29, 1929, filed an answer, admitting the execution of the note for $8,600, and containing, among other things, an admission that the note for $8,600 had been executed by the Herters, but alleging that it had been paid in full, and denying that he, Gauley, had agreed to assume the mortgage on the real estate.

On the same day, defendant Doonan filed an answer, admitting that he had entered into a contract with the defendant J. W. Scovel for the purchase of the real estate, and that by the provisions of the contract Doonan agreed to pay Scovel $36,237.50, and to assume the payment of the mortgages on the real estate, aggregating $18,600, together with interest. It is then alleged that he in turn sold the property under contract to Thomas Gauley, Gauley agreeing to pay the said mortgages. Doonan then sets up a deed from the Scovels to Doonan, which does not contain any assumption clause, and alleges that in turn he, Doonan, conveyed to Gauley without any assumption clause. Doonan then alleges that the ownership of James E. Scovel is colorable only, and that the note upon which suit is brought, in truth and in fact, is the property of J. W. Scovel, who is personally liable for the payment thereof; and Doonan alleges an estoppel against the plaintiff and the said J. W. Scovel.

On March 9, 1929, the Herters filed an answer and cross-petition, in substance admitting everything in the original petition except the assignment, and by way of cross-petition they demand a personal judgment against the defendants Gauley, Doonan, and J. W. Scovel for the sum of $9,100.

On March 29, 1929, Gauley filed an answer to the cross-

petition of the defendants Herters, setting up the transfer from Doonan to Gauley without any assumption clause contained therein, and alleges a merger of the contract with the said deed. On the same date, Doonan filed his answer to the cross-petition of the Herters, setting up, among other things, the deed from Scovel to Doonan without an assumption clause and the merger of the original contract into the deed; also alleging that the note upon which the suit was brought had been paid by J. W. Scovel, and that thereby the liability of the cross-petitioners for the payment of the said note and mortgage had been terminated.

Defendant J. W. Scovel also filed an answer and cross-petition, admitting the allegations of plaintiff's petition except as to assignment, and calling for proof thereof. By way of cross-petition, he sets up a copy of his contract with Doonan and the contract of purchase and sale from Doonan to Gauley.

On May 4, 1929, J. W. Scovel filed an amendment to his cross-petition, setting up the deed from Scovel to Doonan and his mistake in executing the deed without the assumption clause, and asking for reformation to express the true intent of the contract between the parties, J. W. Scovel and Doonan.

Afterwards, Gauley filed his answer to the cross-petition of J. W. Scovel, setting up the transactions in their order, including the deed from Doonan to Gauley without any assumption clause therein contained. Later, Doonan filed an answer to the Scovel cross-petition, alleging a waiver of the assumption clause in the contract of purchase from J. W. Scovel to Doonan, and alleging further that, by reason of the said waiver, he, Doonan, in turn waived the assumption clause provision in the contract of sale from Doonan to Gauley, and executed a deed in accordance with said waiver. He further alleges that James W. Scovel is the real plaintiff in the action; and that James W. Scovel is the owner of the note in question, and the assignment of said instrument to James E. Scovel was colorable only.

Later, Doonan filed an answer to the amendment of the cross-petition of J. W. Scovel, alleging that the right, if any, to a reformation of the deed from J. W. Scovel to Doonan is barred by the statute of limitations, and further alleging that there is no showing that the fraud or mistake was not discovered, or by the exercise of reasonable diligence could not have been discovered, by the said cross-petitioner at the time he now claims

the same occurred. This is followed by a general plea of facts in support of the denial of a reformation of the instrument. Suitable replies were filed by the various parties, after which the cause was brought on for trial.

The court found the plaintiff, James E. Scovel, to be the owner and holder of the note and mortgage declared upon in the petition, and that there was due and owing thereon the sum of $9,134.85. Judgment was entered against the defendants Herters and J. W. Scovel for that amount, with interest and costs. There was also a foreclosure against the real estate. The court found that, as between the defendants Herters and defendant J. W. Scovel, the latter was primarily liable for the payment of the judgment, and in the event of payment by the Herters, subrogation was granted against the defendant Scovel. The court found that the cross-petitioners Herters were not entitled to a personal judgment against the defendants Doonan and Gauley. The court further found that the defendant J. W. Scovel was not entitled to have the deed described and referred to in the cross-petition reformed. The cross-petition of J. W. Scovel against Doonan and Gauley was dismissed.

The main facts in this case are not much in dispute. J. W. Scovel testified, among other things, in reference to his ownership of the land in controversy, the contract of sale to Doonan, which contained an assumption clause, and the execution of the deed from Scovel to Doonan, which did not contain an assumption clause. This land, while the title was carried in the name of J. W. Scovel, really belonged to a syndicate of several parties. The deed was prepared by the cashier of a small bank, at the request of Scovel. It was signed and executed by Scovel, without reading, and he did not discover that the deed did not contain the assumption clause until a long time after the execution of the deed. Scovel was a business man of experience, abundantly able to read, and nothing was done, nor did anything happen, in any wise to prevent him from reading the document before or at the time he signed it; nor is there any satisfactory showing of the facts warranting him in relying upon what he believed to be the contents of the instrument. In other words, there is no showing that he was led to believe that the instrument contained the assumption clause. It is true that he had asked the cashier at the bank to draw the deed, and he attempts to explain his

failure to read the deed by saying that he assumed that the deed was drawn in accordance with the terms of the contract, which contained an assumption clause.

It appears without dispute that J. W. Scovel and one Sam Hall, who was a member of the syndicate, loaned the money to James E. Scovel, who is the son of J. W. Scovel, with which said James E. Scovel, plaintiff, purchased the note and mortgage in suit.

Nels Keller, the bank cashier who drew the deed from Scovel to Doonan, was a witness. His memory was very indistinct in reference to the entire transaction. He was able to say, however, that he had no instructions from Scovel to omit from the deed the provision in the contract with reference to the assumption of the mortgages. He further admits that, at the time, he understood the words "subject to" to be equivalent to an agreement to assume and pay the mortgages referred to.

The defendant Doonan testified, in substance, that he received a deed from Scovel on March 1, 1920, and at the time discovered that it did not contain an assumption clause; and he says he believed at the time that Scovel had waived the provision in the contract requiring him to assume and pay the mortgages, and he relied thereon. It appears that, at the time he received this deed, he had already executed a contract to Gauley for the sale of the land, in which contract Gauley had assumed and agreed to pay the mortgages. Doonan, in turn, states that, inasmuch as Scovel had waived the assumption clause in Scovel's deed to Doonan, Doonan, in turn, waived the assumption clause of the property to Gauley. He did this, he says, in reliance upon the fact that J. W. Scovel had waived the assumption clause in the deed from Scovel to Doonan. Doonan states that he believed at the time that Scovel had waived the assumption clause because he, Scovel, was getting such a good deal, on account of getting such a large cash payment on the property.

In this connection it must be noted that the original contract of purchase and sale between Scovel and Doonan, dated May 27, 1929, specified one mortgage for $10,000, due in 1924, with interest, and one mortgage for $8,000, due in 1929, with interest at 5 per cent, and cash payment of $17,237.50. The deed from J. W. Scovel to Doonan specified that the transfer

was subject to one mortgage for $10,000, due in 1924, and one mortgage for $8,600, due in 1929.

Manifestly, Scovel could not comply with his contract, because the second mortgage, instead of being for $8,000, was for $8,600.00. It therefore was necessary to modify or waive the terms of the contract in making the deed, in order to have the correct amount of existing mortgages properly represented. Doonan took the land with $18,600 against it, instead of $18,000, as shown by the contract, and paid to Scovel $16,637.50, instead of $17,237.50; and Scovel delivered to Doonan a deed with the assumption clause of the contract omitted. It is significant that neither of the parties was able to remember the conversation, if any they had, about the matter. The testimony tends to show that the amount of cash paid was large in proportion to the amount of the sale price of the land, and that the contingency of a personal liability for the payment of the mortgages appeared at the time to be very remote.

Doonan testifies that he did not expect the assumption clause to be in the deed, although he knew that the contract provided for an assumption clause in the deed. Both parties say they had no talk on the subject after the execution of the contract or before and at the time of the execution and delivery of the deed.

I. The cause was submitted on May 20, 1929. On May 28, 1929, Doonan filed an amendment to his answer. Doonan had admitted, in his answer to plaintiff's petition, that the original contract provided for the assumption by him of the mortgages aggregating $18,600. In the amendment to the answer, he withdrew this admission, in so far as the amount of the second mortgage was concerned, alleging it to have been for $8,000, instead of $8,600. The amendment was filed, by permission of the court, to conform to proof.

There is no doubt in the record about these facts. The original contract between J. W. Scovel and Doonan did provide for the assumption of one mortgage for $10,000 and one mortgage for $8,000. However, the records clearly show that the second mortgage was for $8,600, instead of $8,000.

After the filing of this amendment by Doonan, plaintiff, Scovel, moved to have the case reopened, in order that further evidence might be introduced, and he also moved that the amend-

ment be stricken from the files. Both motions were overruled, and of this plaintiff complains.

It will be noted that neither the plaintiff nor the cross-petitioner J. W. Scovel asked that the original contract be reformed. This contract was presented and introduced by the plaintiff. The matter of permitting amendments, particularly those to conform to the proof, lies within the sound discretion of the trial court. The record has been very carefully read, and we reach the conclusion that there was no abuse of discretion. *Simpson College v. Executors Mann Estate*, 203 Iowa 447.

II. The plaintiff, appellant, contends that the court erred in refusing to render a judgment for the plaintiff and against the defendant Doonan. This involves the question of the reformation of the deed from Scovel to Doonan. At  this point it will be recalled that the contract between J. W. Scovel and Doonan provided for the assumption of the mortgages on the real estate by Doonan, but that, when the scrivener, the cashier of the bank, drew the deed, he then understood that "subject to" was equivalent to an assumption and agreement to pay, and the deed did not contain an assumption clause. The law on this subject is well settled in this jurisdiction.

There is here neither claim nor proof of fraud, and in order to prove a case for reformation, it must clearly appear that there was a mutual mistake. It is not enough to show that one of the parties made a mistake. Furthermore, the testimony must be clear and convincing. In this case, Doonan examined the deed at the time it was delivered to him, and he testified that he did not expect the deed to contain an assumption clause. It is true his explanation is not very satisfactory nor convincing, but that is not the point. The evidence in favor of a reformation is neither satisfactory nor convincing. Moreover, after the receipt of the deed from Scovel, Doonan acted to his prejudice in a reliance upon the deed without an assumption clause, by waiving the assumption clause in the transfer of the land to his grantee, Gauley. As previously stated, J. W. Scovel was a man of considerable business experience. He was not relying upon any circumstance which warranted him in not reading the instrument. He was able to read, and had every opportunity to do

so; and, having signed the deed without reading it, he cannot now, in equity, under the facts and circumstances in the record in this case, have a reformation of the instrument. As has been said in *Turnis v. Ballou,* 201 Iowa 468:

" 'A written contract is the highest evidence of the terms of an agreement between the parties to it, and it is the duty of every contracting party to learn and know its contents before he signs and delivers it. He owes this duty to the other party to the contract, because the latter may, and probably will, pay his money and shape his actions in reliance upon the agreement. * * * If one can read his contract, his failure to do so is such gross negligence that it will estop him from denying it unless he has been dissuaded from reading it by some trick or artifice practiced by the opposite party. * * * This is a just and salutary rule, because the other contracting party universally acts and changes his position on the faith of the contract.' "

Many other questions have been discussed. We agree with the decision of the trial court, and the case is—*Affirmed.*

MORLING, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.